STATE OF MAINE                                         SUPERIOR COURT
CUMBERLAND, ss.                                  CIVIL ACTION
                                                    DOCKET NO. CV-20-537

HUNTER STEWART, on behalf of      )
himself and all others similarly situated,    )
                                      )
                Plaintiffs,          )
                                        )             ORDER ON MOTION
           v.                       )             FOR CLASS CERTIFICATION
                                        )
THE UNIVERSITY OF MAINE         )
SYSTEM,                               )
                                        )
                Defendant.        )

## BACKGROUND

Before the court is the Motion for Class Certification filed in the above-captioned matter by Plaintiff Hunter Stewart ("Plaintiff").[1] The Class Action Complaint pled various causes of action against Defendants The University of Maine System and Chancellor Dannel Malloy. By Order of this court, on July 13, 2021, all of Plaintiff's claims were dismissed except for his breach of contract claim as pled against Defendant The University of Maine System. *See Order, Stewart v. Univ. of Me. Sys.*, No. CV-20-537, slip op. at 1, 14 (Me. Super. Ct., Cum. Cnty., July 13, 2021).

By and through his Motion for Class Certification, Plaintiff requests this court issue a certification order that (1) certifies the breach of contract claim in this lawsuit as a class action; (2) confirms Plaintiff as class representative; (3) appoints Plaintiff's Counsel Leeds Brown Law, P.C., The Sultzer Law Group, P.C., and Ainsworth, Thelin & Raftice, P.A., as "Class Counsel"; and (4) that would permit Class Counsel to conduct notice to the defined classes for which certification is issued. The Motion for Class Certification is opposed by Defendant The University of Maine

---

[1] The Motion for Class Certification was initially filed by two named plaintiffs – Hunter Stewart and Nehemiah Brown. Mot. for Class Cert. Since the time of filing, only Hunter Stewart continues to seek certification of the putative classes as named plaintiff and class representative.

1

REC'D CUMB CLERKS OFC
SEP 8 '23 AM8:42

System (the "Defendant"). The court heard oral argument on the question of class certification on Thursday June 13, 2023. After hearing argument and reviewing the motion papers, for the reasons discussed below the Motion for Class Certification is GRANTED.

## FACTUAL ALLEGATIONS

The court summarized many of the factual allegations from Plaintiff's Class Action Complaint in the order on Defendant's Motion to Dismiss. *See Order, Stewart*, No. CV-20-537, slip op. at 1-2 (Me. Super. Ct., Cum. Cnty., July 13, 2021). The Class Action Complaint also alleges the following facts germane to certification of this lawsuit as a class action. The court accepts the allegations in the Class Action Complaint as true for the purpose of deciding the Motion for Class Certification. *Millett v. Atlantic Richfield Co.*, No. Civ.A. CV-98-555, 2000 WL 359979, at *5 (Me. Super. Ct. Mar. 2, 2000), *appeal dismissed* 2000 ME 178, 760 A.2d 250.

Defendant is a network of public universities in Maine with an enrollment of approximately 34,000 students as of Spring 2020. Compl. ¶ 29. The public research university at University of Maine Orono ("UM") is Defendant's flagship school. Compl. ¶ 30. Defendant manages and operates each of its member universities: UM, University of Maine at Augusta, University of Maine at Farmington, University of Maine at Fort Kent, University of Maine at Machias, University of Maine at Presque Isle, and University of Southern Maine. Compl. ¶ 32.

Plaintiff was an undergraduate student enrolled with UM for the Spring 2020 semester. Compl. ¶ 23. The Spring 2020 semester began on or around January 21, 2020, and it was scheduled to end on or around May 1, 2020. Compl. ¶ 40. For that semester, Plaintiff paid the out-of-state rate of tuition to enroll for in-person, on-campus learning. Compl. ¶ 23; Mot. for Class Cert. Ex. C (Dep. Of Hunter Stewart), 24:16-23. He also paid a unified fee, a recreation fee, a student activity fee, and other fees associated with Defendant's in-person services. Compl. ¶ 23.

In response to the COVID-19 pandemic, Defendant stopped providing in-person services

2

at each of its campuses and facilities beginning on March 23, 2020, and transitioned to an online learning modality for the remainder of the Spring 2020 semester. Compl. ¶¶ 4-7, 52, 54. Many of the services for which Defendant charged tuition and assessed fees were terminated or cancelled, and consequently many benefits of in-person learning became unattainable to Defendant's students, like Plaintiff. Compl. ¶¶ 55, 63-65. Defendant did not refund any amount of the tuition, unified fee, student activity fee, recreation center fee, or other service-related fees paid by Plaintiff for the Spring 2020 semester. Compl. ¶¶ 4, 25, 56, 67-68. Defendant's refund offered to students like Plaintiff covered only unused portions of the fee paid towards the student's room and board. *See, e.g.,* Mot. for Class. Cert. Ex. E (Dep. of Christopher Richards), 146:18-147:3.

Prior to Plaintiff's enrollment, Defendant highlighted how the in-person educational opportunities, experiences, and services it provided were invaluable to Plaintiff's educational experience. Compl. ¶ 47. Defendant offered these opportunities and services in exchange for Plaintiff's enrollment and registration for classes at one of Defendant's campuses for the Spring 2020 semester. Compl. ¶¶ 48-49. Plaintiff and the putative class members were provided similar materials and documents by each of Defendant's schools describing Defendant's in-person educational opportunities, experiences, and services.[2] Compl. ¶¶ 51, 60. Plaintiff made tuition and fee payments to Defendant based on Defendant's representations regarding its in-person educational opportunities, experiences, and services. Compl. ¶ 50.

Defendant priced its tuition rate and fees charged to Plaintiff based on the in-person nature of the educational opportunities, experiences, and services it provided. Compl. ¶ 66. After

---

[2] These materials include, but may not be limited to: the fiscal year 2020 outline of Student Charges, Mot. for Class Cert. Ex. H; the System Financial Responsibility Agreement, Mot. for Class Cert. Exs. L, M; the material memorializing a student's semester-specific payment of tuition, *e.g.,* Mot. for Class Cert. Exs. L, V; the Course Catalog, Mot. for Class Cert. Ex. O; the Student Handbook, Mot. for Class Cert. Ex. DD; and the University's Code of Conduct, Mot. for Class Cert. Ex. NN.

Defendant's conversion to online learning, Plaintiff's and the putative class members' received educational opportunities, experiences, and services materially different from the opportunities, experiences, and services that they expected to receive in return for their payment of tuition and fees. Compl. ¶ 62.

## MOTION FOR CLASS CERTIFICATION STANDARD

In Maine, a putative class action may proceed "only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." M.R. Civ. P. 23(a); *see Millett*, 2000 WL 359979, at *4.[3] "The test is conjunctive; if one element is not met, then the claim cannot be certified for class treatment." *Garcia de León v. New York Univ.*, No. 21 Civ 05005, 2022 WL 2237452, at *8 (S.D.N.Y. June 22, 2022).

In addition to the four prerequisites supplied by Rule 23(a), a putative class action may be maintained only if one of the three requirements imposed by Rule 23(b) is satisfied. M.R. Civ. P. 23(b); *Millett*, 2000 WL 359979, at *5. A court may determine that Rule 23(b) is satisfied when a party demonstrates that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." M.R. Civ. P. 23(b)(3). To find superiority, courts may consider (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions, (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the

---

[3] In *Millett*, the court observed that the text of Maine Rule of Civil Procedure 23(a) is identical to the text of Federal Rule of Civil Procedure 23(a). *Millett*, 2000 WL 359979, at *5 n.12. Due to this textual similarity and the limited availability of Maine case law on class actions, the *Millett* court relied extensively on federal case law to decide a motion for class certification. This court takes the same approach.

class, (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum, or (D) the difficulties likely to be encountered in the management of the class. M.R. Civ. P. 23(b)(3)(A)-(D).

Determination of class certification is committed to the trial court's discretion. *Millett*, 2000 WL 359979, at *5 (citations omitted). The court must conduct a "rigorous analysis" of the present record against the Rule 23 prerequisites and requirements without deciding the merits of the plaintiff's claims. *Id.* (citation omitted). However, the court may consider evidence presented to satisfy Rule 23 when that evidence also relates to the merits of the plaintiff's claims. *Id.* (citations omitted); *see In re New Motor Vehicles Canadian Exp. Antitrust Litig*, 522 F.3d 6, 17 (1st Cir. 2008) (a trial court may probe behind the pleadings at the class certification stage to test legal or factual premises that are dispositive of the viability of the class action). The party seeking class certification bears the burden to demonstrate, under a strict burden of proof and at least by a preponderance of the evidence, that the applicable Rule 23 prerequisites and requirements are satisfied. *Millett*, 2000 WL 359979, at *5 ("strict burden of proof") (citations omitted); *Garcia de León*, 2022 WL 2237452, at *9 ("at least a preponderance of the evidence") (citation omitted).

## DISCUSSION

Plaintiff's Motion for Class Certification requests certification of three classes:

1. Tuition Class (the "Tuition Class"): "All enrolled students during the Spring 2020 semester at the [UM], who paid tuition, or on whose behalf tuition was paid, but had their classes and educational services moved to online only learning."

2. System Fee Class (the "System Fee Class"): "All enrolled students during the Spring 2020 semester at a University of Maine System university, who paid the 'Student Activity Fee' and the 'Unified Fee,' or on whose behalf such fees were paid, but had the related services, facilities, and campus access restricted or eliminated."

3. Orono Fee Class (the "Orono Fee Class"): "All students during the Spring of 2020 semester at the [UM], who paid, or was paid on their behalf, the

5

'Communications Fee' and 'Recreation Center Fee' but had the related services and access restricted or eliminated."

Mot. for Class Cert. 1-2. The court addresses the Motion for Class Certification for each proposed class in the context of the prerequisites and requirements for certification under Rule 23.

## I. Numerosity.

Rule 23(a)(1) requires that a class be so numerous that joinder of all members is impracticable. *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 131 (1st Cir. 1985); *Ninivaggi v. Univ. of Del.*, Nos. 20-cv-1478-SB, 2023 WL 2734343, at *3 (D. Del. Mar. 31, 2023). "Courts routinely find this requirement satisfied for classes that have [forty] or more members." *Arredondo v. Univ. of La Verne*, 341 F.R.D. 47, 51 (C.D. Cal. Feb. 8, 2022) (citations omitted); *see Garcia de León*, 2022 WL 2237452, at *10.

Here, the numerosity requirement is clearly met for each of Plaintiff's proposed classes. Defendant does not forcefully argue otherwise. Plaintiff alleges approximately 27,000 undergraduate and graduate students were enrolled with Defendant during the Spring 2020 semester.[4] Mot. for Class Cert. 8. Each such student is a putative member of the System Fee Class. Likewise, of the approximately 27,000 enrolled students, students enrolled for in-person instruction at UM and who therefore paid tuition and certain fees associated specifically with that school are putative members of the Tuition Class and the Orono Fee Class. There are far more than forty such students. *See* Mot. for Class Cert. Ex. G. Joinder of all class members would be impracticable for each of Plaintiff's proposed classes.

## II. Commonality.

---

[4] Initially, Plaintiff alleged approximately 34,000 undergraduate and graduate students were enrolled with Defendant during the Spring 2020 semester. Compl. ¶¶ 29, 40, 76. Later, Plaintiff acknowledged that Defendant, in its interrogatory responses and document production, represented that at least 27,000 students were enrolled. Mot. for Class Cert. 8. The difference in Defendant's estimated enrollment figures for the Spring 2020 semester does not change the result of the court's numerosity inquiry.

Rule 23(a)(2) requires demonstration that there are questions of law or fact common to the class. *Arredondo*, 341 F.R.D. at 51. Put another way, a plaintiff must demonstrate that the class members suffered the same injury. *Wright v. S. N.H. Univ.*, 565 F. Supp. 3d 193, 202 (D. N.H. 2021) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). This qualitative test is satisfied when the course of conduct that gives rise to the plaintiff's cause of action affects all class members. *Id.* (the class members' "claims must depend upon a common contention"); *see Barry v. Univ. of Wash.*, No. 20-2-13924-6-SEA, 2023 WL 4265993, at *2 (Wash. Super. June 28, 2023) (citation omitted). At issue within a commonality inquiry is the "capacity of a class-wide proceeding to generate common answers apt to drive resolution of the litigation." *Garcia de León*, 2022 WL 2237452, at *10 (citation omitted). Courts construe this prerequisite permissively. *Arredondo*, 341 F.R.D. at 51 (citation omitted); *Wright*, 565 F. Supp. 3d at 202; *see Ninivaggi*, 2023 WL 2734343, at *3 ("even a single common question will do") (citation and internal quotation marks omitted).

There are questions or law or fact common to each of the proposed class's claims.[5] For example:

- Regarding the Tuition Class, did Plaintiff and similarly situated students enter into a contract with Defendant for in-person and on-campus educational opportunities, experiences, and services as described in Defendant's System Financial Responsibility Agreement, Student Handbook, Course Catalog, Code of Conduct, tuition payment invoices and receipts, when he paid tuition to enroll at UM for the Spring 2020 semester?

- Regarding the System Fee Class, did Plaintiff and similarly situated students enter into a contract with Defendant for in-person and on-campus educational opportunities, experiences, and services as described in the fiscal year 2020 outline of Student Charges and System Financial Responsibility Agreement when they paid the System Fee and Unified Fee?

- Regarding the Orono Fee Class, did Plaintiff and similarly situated students enter into a contract with Defendant for in-person and on-campus educational opportunities,

---

[5] Plaintiff lists other common questions in his Motion for Class Certification that the court does not repeat here. *See* Mot. for Class Cert. 9-10.

experiences, and services as described in the fiscal year 2020 outline of Student Charges and System Financial Responsibility Agreement when they paid the Communications Fee and Recreation Center Fee?

- Concerning each proposed class, does Defendant's decisions to end in-person and on-campus instruction and services as of March 23, 2020, and to not refund the relevant portion of tuition or the fees at issue paid by Plaintiff and similarly situated students for the Spring 2020 semester constitute a breach of the purported contract?

A class-wide proceeding will generate common answers to these questions, which answers will resolve litigation in this matter. Therefore, the commonality inquiry is satisfied for each class.

## III. Typicality.

Rule 23(a)(3) requires that the claims of the named plaintiff be typical or representative of the claims of the putative class members. *Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21, 27 (D. Me. Mar. 20, 2013); *Arredondo*, 341 F.R.D. at 51. In other words, the named plaintiff's claims must not be "markedly different" than the class members' claims. *Ninivaggi*, 2023 WL 2734343, at *4 (citation omitted). Like the commonality prerequisite, typicality is satisfied "when the claims of the representative plaintiff[] arise from the same course of conduct that gives rise to the claims of the other class members, and where the claims are based upon similar legal theories." *Garcia de León*, 2022 WL 2237452, at *10 (citation omitted); *In re Hannaford Bros.*, 293 F.R.D. at 27; *Wright*, 565 F. Supp. 3d at 203 (citations omitted). The representative plaintiff's claims need not be substantially identical to the class members' claims; rather, it is enough to demonstrate typicality for the representative plaintiff's claims to be reasonably co-extensive with the class members' claims. *Arredondo*, 341 F.R.D. at 52 (citation omitted); *Wright*, 565 F. Supp. 3d at 203 (the claims need only share the same essential characteristics) (citation and quotation marks omitted).

Although the document or documents that Plaintiff relies upon to prove formation of the contract underlying each class's claim vary among the three classes proposed for certification, the

8

contracts at issue are standardized within each class. *See Arredondo*, 341 F.R.D. at 52.[6] Likewise, Defendant's students enrolled for the Spring 2020 semester paid different rates of tuition and different fees, for example based on (1) whether they were an out-of-state or in-state student, (2) their undergraduate or graduate status, or (3) their qualification for merit scholarships or other grants. Notwithstanding these differences, each of the proposed class's membership is limited to individuals who, like Plaintiff, made a particular payment for one of Defendant's services (e.g., tuition or certain fees) but who had the paid-for service prematurely terminated by Defendant without reimbursement. Compl. ¶¶ 30, 79; *see In re Hannaford Bros.*, 293 F.R.D. at 27-29; *Wright*, 565 F. Supp. 3d at 203. Hence, within each class, Plaintiff's breach of contract claim is at least "reasonably co-extensive" with the putative class members' breach of contract claim. The claims share the "same essential characteristics."

Defendant argues that Plaintiff's enrollment as an out-of-state undergraduate business student at UM makes his claims atypical of other students' claims. This is because many other students were enrolled in different programs or at different campuses, and they may have paid different fees than Plaintiff or a different rate of tuition. As noted above, the court recognizes the diversity of experience and conditions of enrollment among the putative class members. However, at bottom, Plaintiff alleges that he endured a course of conduct directed by Defendant against each class. He alleges that Defendant breached its purported contracts, under which it promised to provide in-person educational experiences and services in return for tuition and fee payments, when it ended in-person and on-campus learning and services during March 2020 without

---

[6] For example, the Tuition Class's implied contract is based on the System Financial Responsibility Agreement, Handbook, Course Catalog, Code of Conduct, and Plaintiff's bill and invoice reflecting his payment of tuition charged for the semester. The System Fee Class and Orono Fee Class each assert a contract based on UM's and Defendant's list of student charges for Defendant's fiscal year 2020.

9

refunding students' tuition and fee payments. That is enough to demonstrate typicality. *See In re Hannaford Bros.*, 293 F.R.D. at 28-29; *Wright*, 565 F. Supp. 3d at 203; *Arredondo*, 341 F.R.D. at 52; *Little v. Grand Canyon University*, No. CV-20-00795-PHX-SMB, 2022 WL 266726, at *6 (D. Ariz. Jan. 28, 2022).

## IV. Adequacy.

Rule 24(a) requires that the representative plaintiff will "fairly and adequately" protect the interests of the class. *See In re Hannaford Bros.*, 293 F.R.D. at 29; *Barry*, 2023 WL 4265993, at *3 (citation omitted). This prerequisite is satisfied when it is demonstrated that (1) there is no conflict of interest between the class representative and the class members, and (2) the class representative will prosecute the action vigorously on behalf of the class. *Arredondo*, 341 F.R.D. at 52 (citation omitted); *Wright*, 565 F. Supp. 3d at 203 (quoting *Andrews*, 780 F.2d at 130). Courts also consider the qualification and experience of class counsel to conduct class action litigation. *Millett*, 2000 WL 359979, at *8.

Here, Defendant argues that Plaintiff is inadequate to represent each class for which he seeks certification under these standards. Defendant points to instances of Plaintiff's misconduct when he was a student enrolled with Defendant. However, the court disagrees that this misconduct undermines the adequacy of Plaintiff's class representation. Plaintiff's misconduct does not bear directly upon the breach-of-contract evidence that would be offered in this case. *See Smart v. R.C. Moore, Inc.*, No. Civ.A. CV-01-264, 2002 WL 273661, at *4 (Me. Super. Ct. Jan. 15, 2002). Moreover, the present record demonstrates that Plaintiff is several years removed from his complained-of misconduct, and that he is currently living independently and is professionally employed. Mot. for Class Cert. Ex. C, 8:10-16, 9:2-14:23, 103:9-12. Otherwise, Plaintiff expressed a willingness and commitment to class representation that supports a finding that the

10

adequacy prerequisite is satisfied in this case.

Regarding the qualification and experience of class counsel to conduct the class action litigation, Plaintiff's counsel has demonstrable expertise litigating COVID-19 university tuition refund class action lawsuits. *See* Mot. for Class Cert. 18-19. Moreover, counsel has "demonstrated a willingness to vigorously and competently advocate for the interests of the proposes classes." *Millett*, 2000 WL 359979, at *8. Notwithstanding Defendant's dispute concerning class counsel's qualifications and experience, for the purpose of class certification the court finds that class counsel possesses the requisite qualification and experience to prosecute the putative class's claims.

## V. Predominance & Superiority.

The predominance inquiry under Rule 23(b)(3) is "closely related" to the commonality prerequisite within Rule 23(a)(2) because each probes whether there are questions of law or fact common to the class. *Millett*, 2000 WL 359979, at *10. However, to satisfy the predominance inquiry the common questions or law or fact must predominate over individual questions that may need to be decided; the common questions must be central to all claims.[7] *Id.* Common questions predominate over individual questions when the common questions "present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Arredondo*, 341 F.R.D. at 53 (citation omitted). Apart from predominance, the superiority inquiry asks whether "the objectives of the particular class action procedure will be achieved in the particular case." *Id.*; *see* M.R. Civ. P. 23(b)(3)(A)-(D).

The predominance inquiry must be undertaken through examination of the elements of the

---

[7] An individual question is one that requires putative class members to present evidence that varies among them, whereas a common question is one for which the same evidence will suffice for each member to make a prima facie showing or where the issue is susceptible to generalized, class-wide proof. *Wright*, 565 F. Supp. 3d at 204 (quotation marks omitted) (citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)).

11

plaintiff's claims. *Wright*, 565 F. Supp. 3d at 204. Here, Plaintiff's remaining claim is for breach of contract. To prevail on a breach of contract claim, a plaintiff must demonstrate the existence of a contract with the defendant, the defendant's breach of a material term, and that the breach caused the plaintiff damages. *See Tobin v. Barter*, 2014 ME 51, ¶ 10, 89 A.3d 1088 (citation omitted). Plaintiff isolates the primary issues concerning liability and damages that are presently before the court: "(i) the interpretation of the Student-University contract which is based on standardized policy documents under an objective legal test ('reasonable expectations'), (ii) the implementation of [Defendant's] campuses-wide closure, (iii) the implementation of [Defendant's] universal no refund policy when it failed to provide services and access, [and] (iv) the measure of damages under Maine contract law." Pl.'s Reply in Support of Pl.'s Mot. for Class Cert 11-12. He also identifies key evidence relative to each issue that is common to each member of each class.

### a. Common questions regarding Defendant's liability predominate over individual questions.

With respect to its liability under Plaintiff's breach of contract theory, Defendant primarily argues that individual questions concerning contract formation predominate over common questions. Specifically, Defendant argues that what each class member's purported contract says about in-person instruction and services is not susceptible to proof with common evidence because the Student Financial Responsibility Agreement[8] does not address that issue. *See Evans v. Brigham Young Univ.*, No. 1:20-CV-100-TS, 2022 WL 596862, at *4 (D. Utah Feb. 28, 2022).

Under Maine law, contract formation and the intent of the parties are questions of fact. *McClare v. Rocha*, 2014 ME 4, ¶ 16, 86 A.3d 22. Each party must demonstrate, either expressly or impliedly, their assent to the contract's terms and their intention to be bound thereby. *Id.*; *Searles v. Trs. of St. Joseph's College*, 1997 ME 128, ¶ 13, 695 A.2d 1206. This is an objective standard.

---

[8] *See* Mot. for Class Cert. Ex. L (form agreement), M (Plaintiff's agreement).

12

*See McClare*, 2014 ME 4, ¶¶ 20-21, 86 A.3d 22.

Plaintiff identified a suite of policy and other materials that form the basis for his implied contract with Defendant. *See supra* 3 n.2. These documents are standard within and specific to each class. It may be that there are marketing and other materials separate from the standardized documents Plaintiff points to, which could inform individual class members' understanding of what they would receive from Defendant in return for enrollment and payment of tuition and fees (e.g., in-person experiences and services).[9] Notwithstanding the existence of such individual questions, "the conduct necessary to show that in-person education was part of the bargain will be the same" for all members of each proposed class. *Ninivaggi*, 2023 WL 2734343, at *7 (implied contract). All members of each class are, by definition, current or former students of Defendant's who paid tuition and certain fees to Defendant for the Spring 2020 semester. In return, they expected to receive from Defendant in-person educational experiences, opportunities, and services. *See Wright*, 565 F. Supp. 3d at 204. The ultimate issue of whether Defendant's conduct and representations, from the time of a student's enrollment through their commencement of classes, formed a contract that required Defendant to provide in-person instruction, access to facilities, and services is susceptible of class-wide proof. *Id.*; *Barry*, 2023 WL 4265993, at *3.

### b. Common questions regarding calculation of class members' damages predominate over individual questions.

Where, as here, "common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain." *In re Suffolk Univ. COVID Refund Litig.*, No. 20-10985-WGY, 2022 WL 6819485, at *2 (D. Mass.

---

[9] The court assumes Plaintiff will rely on documents common to all class members to prove the purported "Student-University contract." Indeed, he represents that he will. Pl.'s Reply in Support of Pl.'s Mot. for Class Cert 11-12. If Plaintiff indicates reliance on member-specific material, the court is unlikely to continue certifying the lawsuit as a class action.

13

Oct. 11, 2022); *see Schultz*, 2023 WL 4030184, at *9.

In addition to its liability arguments, Defendant also argues that each proposed class will present innumerable individual issues with respect to proof of class members' injuries and damages. To satisfy the predominance inquiry, a plaintiff must show that "damages are capable of measurement on a classwide basis." *Arredondo*, 341 F.R.D. at 53. Damages are capable of such measurement "when the damages calculation is attributable to a plaintiff's theory of harm." *Id.* In Maine, the "market value" measure of damages may be used to calculate damages for breach of an implied contract. *See Thurston v. Nutter*, 126 Me. 609, 609, 139 A. 680, 680 (1928).

> Plaintiff presents the following methodology for determination of damages for each class:
>
> [I]t is a straightforward mathematical calculation equaling the difference between the total monies paid for Defendant's in-person and on-campus educational services, measured against the market value of the services actually received – including a market comparator with an online only product.
>
> Plaintiffs ... lost at least 47 days' worth, or approximately 43% of the Spring 2020 semester, of access to campus, in-person instruction, and on-campus services and activities.
>
> [O]ne measure of market damages is to compare the tuition and fees of a campus-based program (i.e. the one contracted for) with the lower tuition and fees charged to students who were enrolled in an online-only program – for those purposes of establishing a market comparators, including internal pricing structures within the [University].
>
> For out-of-state undergraduate students enrolled for in-person on-campus instruction, UMaine Online "reflects a potential market comparator that costs nearly 70% less than in-person instruction."

Mot. for Class Cert. 20-23.

Review of the present record indicates individual issues of proof of the amount of damages recoverable by each member of each class:

- Concerning the Tuition Class, class members paid tuition according to their resident or non-resident status, their enrollment for in-person or online courses, and their undergraduate or graduate status. Mot. for Class Cert. Exs. H, BB.

14

- Concerning the System Fee Class, the amount of the Unified Fee and System Fee paid by class members varied according to the campus where they attended class, their undergraduate or graduate status, and the number of credit hours in which they were enrolled. Mot. for Class Cert. Exs. H, BB.

Regarding the Orono Fee Class, all class members were assessed the same Communications Fee and Recreation Center Fee. Mot. for Class Cert. Ex. H. However, a portion of the Communications Fee paid by each student supports student-administered radio and television broadcasts, and media and internet facilities. Mot. for Class Cert. Ex. H. Hence, there is a question regarding the amount of these fees that is recoverable as damages under Plaintiff's breach of contract theory: what portion of the Communications Fee paid by each student supported a service that persisted for the duration of the Spring 2020 semester and was continuously available to students off-campus?

Notwithstanding variance in the amount of tuition and fees paid to Defendant by class members, the "ultimate calculation" of each class member's damages is "capable of resolution easily and without considering an overwhelming number of individualized questions." *See Arredondo*, 341 F.R.D. at 53. Plaintiff will present the same "class-wide evidence that [Defendant's] course of conduct, transitioning to online-only education, caused economic loss to Plaintiff" and class members. *Barry*, 2023 WL 4265993, at *4. Resolution of the individual damages questions identified by Defendant is best suited for summary judgment or the damages stage of proceedings.[10] *Id.*; *In re Suffolk Univ. COVID Refund Litig.*, No. 20-10985-WGY, 2022

---

[10] In the court's view, this case is distinguished from COVID-19 university tuition refund class action lawsuits in which courts determined demonstration of each class members' damages would require inquiry of each individual class member such that common questions did not predominate and the classes were not administratively feasible. *See Evans*, 2022 WL 596862, at *4 (the court could not determine membership for the proposed class where the record did not disclose whether a student or a third party paid the student's tuition, which would have prompted individual inquiry for each student asking whether they personally made tuition payments to attend in-person classes); *Garcia de León*, 2022 WL 2237452, at *18 (highlighting individual questions arising from facts that some students receiving refunds of class and school-based fees while other students did not, and that the defendant university's colleges and programs advertised different services in exchange for the payment of fees); *Omori v. Brandeis Univ.*, No. 20-11021-NMG, 2023 WL 3511341, at *4-6 (D. Mass. May 16, 2023) (plaintiffs could not compare directly pre-COVID undergraduate courses offered in-person and online because defendant university did not offer undergraduate online programs to establish the actual value of online, post-COVID education).

WL 6819485, at *2 (D. Mass. Oct. 11, 2022) ("[t]he baseline damages calculation can be adjusted depending on individualized factors"); *Arredondo*, 341 F.R.D. at 53; *Little*, 2022 WL 266726, at *7.

For the Tuition Class, individualized damages questions are limited. They regard class members' residency. For example, the tuition rate for resident undergraduate and graduate students enrolled in-person was less than the rate for non-resident students enrolled in Defendant's online program. Mot. for Class Cert. Exs. H, BB. It may be that, if there is no differential available, Plaintiff has no claim for resident students enrolled in Defendant's online program. However, that question goes to the merits and the court does not decide it here. Another individual question is that tuition paid by some students may have been offset by scholarships or grants awarded to them. However, no student received a tuition refund. Any tuition recoverable as damages by class members will be proportional to the percentage of the Spring 2020 semester for which in-person classes and services were cancelled. That is the ultimate calculation for the tuition class. *See Arredondo*, 341 F.R.D. at 53.

There are also individual questions going to damages for each fee class. For the System Fee Class, individual questions regard the campus where the class member is enrolled, the number of credit hours in which they are enrolled, and their undergraduate or graduate status. For the Orono Fee Class, they regard the degree to which each class member continued to enjoy access to certain student-driven media services or to which online learning was underwritten by the Communications Fee. Again, the common damages questions (e.g., (1) whether a student paid a particular fee to Defendant? (2) whether the experiences, opportunities or services corresponding to that fee were cancelled by Defendant?) are central to the ultimate calculation of damages for the System Fee Class and Orono Fee Class. Thus, these questions predominate over individual

16

damages questions.

### c. The objectives of each proposed class will be achieved through commencement as a class action.

Finally, the court finds that each of the Rule 23(b)(3) factors for finding superiority is satisfied in this case. Any interest of members of the class in individually controlling the prosecution or defense of separate actions is low. The court is unaware of separate, pending litigation concerning the proposed classes' claims. It is highly desirable to concentrate the classes' claims in the present lawsuit for uniform and efficient adjudication. And, any difficulties inherent in the management of the proposed classes will not be insurmountable.

### CONCLUSION

Defendant identified issues going to the merits of Plaintiff's claims. However, the vast majority of case law around the country addressing the issue of Covid refunds for students qualifies these cases as sufficiently common and predominant to allow class certification to proceed at this stage.

Based on the foregoing, the entry will be:

1.    Plaintiff Hunter Stewart's Motion for Class Certification is GRANTED.

2.    Plaintiff is confirmed as class representative;

3.    Plaintiff's Counsel Leeds Brown Law, P.C., The Sultzer Law Group, P.C., and Ainsworth, Thelin & Raftice, P.A., are appointed as "Class Counsel";

4.    Class Counsel may provide notice to the defined classes for which certification is issued.

The Clerk is requested to enter this Order on the Docket, incorporating it by reference pursuant to Maine Rule of Civil Procedure 79(a).

17

Date: **9/8/23**

Thomas R. McKeon
Justice, Superior Court

Entered on the Docket: **9/8/2023**

18

STATE OF MAINE                                        SUPERIOR COURT
CUMBERLAND, ss                                        CIVIL ACTION
                                                      DOCKET NO. CV-20-537


HUNTER STEWART, ET AL.

        Plaintiffs

    v.                                       ORDER

THE UNIVERISTY OF MAINE
SYSTEM and DANIEL P. MALLOY

        Defendants

XXXX XXXXXXXXXX XXX
XX XXXXXXXX XXXXX


        Before the court is the Defendants, University of Maine System and Daniel P.

Malloy's, Motion to Dismiss.  At this initial stage of the litigation, stage, the court's

inquiry is limited.  The court must assume Plaintiff's allegations are true and consider

only whether they state a legal claim.  Defendants' Motion is denied with regard to Count

I against the University of Maine System only.  All other counts are hereby dismissed.

## I. Factual Background

        The following facts are taken from the Plaintiffs' Complaint and are considered

true for the purposes of a Motion to Dismiss.

        The named Plaintiffs, Hunter Stewart and Nehemiah Brown, were students at

institutions within the University of Maine System during the spring semester of 2020.

The Plaintiffs both paid tuition and mandatory fees to attend their institutions.  The

Plaintiffs allege that their tuition and fees were paid to the University System in exchange

for in-person academic instruction and other in-person services such as computer labs,

libraries, and other in-person facilities.

Entered on the Docket: 7/14/21

1

The Plaintiffs allege that the University System agreed to offer specific in-person experiences in exchange for the Plaintiffs' enrollment with one of Maine's public Universities. According to the Plaintiffs, the University System claimed to offer specific in-person experiences through advertisements and other promotional materials provided to prospective students. The Plaintiffs allege that they accepted the System's offer to provide these specific in-person experiences when they paid the tuition and fees necessary to enroll with their respective institution. The Plaintiffs conclude that their payment of tuition and fees established a binding contract between Plaintiffs and the University System, under which the University System had a contractual obligation to provide the in-person instruction and in-person experiences advertised in the promotional materials.

The 2020 spring semester began on January 21, 2020 and was scheduled to run until May 1, 2020. Students attended in-person classes and were able to avail themselves of the in-person services until March 11, 2020. On March 11, the University System began adjusting its services and course structure in response to the health threats posed by COVID-19. All classes within the University System were moved to a fully remote format after March 23, 2020. The University also discontinued many of its in-person services that students were required to pay a fee for, including: healthcare facilities; fitness centers; student events; sports; and in-person commencement. The University System did not prorate or refund the tuition or fees charged for Spring 2020 semester.

The Plaintiffs have filed this Class Action Complaint on behalf of all students enrolled in the University System during the Spring 2020 semester. The Plaintiffs have named the University of Maine System as a Defendant, as well as its Chancellor, Daniel Malloy, in his individual capacity. The Defendants have moved to dismiss the Class Action Complaint pursuant to M.R. Civ. P. 12(b)(6).

2

## II. Motion to Dismiss Standard

At the outset, the court notes that a motion to dismiss under the Maine Rules of Civil Procedure "tests the legal sufficiency of the allegations in the complaint, not the sufficiency of the evidence the plaintiffs are able to present." *Barnes v. McGough*, 623 A.2d 144, 145 (Me. 1993)(internal citations omitted). Maine has not imposed any heightened or plausible pleading requirements on complaints brought in state court, except perhaps in cases with a risk of abusive litigation. *See Bean v. Cummings*, 2008 ME 18, ¶ 11, 939 A.2d 676.

On a motion to dismiss pursuant to M.R. Civ. P. 12(b)(6), the court shall "consider the facts in the complaint as if they were admitted." *Bonney v. Stephens Mem. Hosp.*, 2011 ME 46, ¶ 16, 17 A.3d 123. The complaint is viewed "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* (quoting *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830). "Dismissal is warranted when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that he might prove in support of his claim." *Id.*

## III. Discussion

The Defendants argue that the Complaint should be dismissed because all claims are barred by certain applicable immunities, and alternatively, because the Plaintiffs have failed to state a claim upon which relief can be granted. The court will consider each argument in turn.

### A. Immunities

The Defendants argue that the Plaintiffs' Complaint is barred against the University System based on sovereign immunity and also because the Plaintiffs' theory of recovery is grounded in the tort of educational malpractice that is not recognized under

3

Maine law. The Defendants also argue that the Complaint is barred by qualified immunity against Chancellor Malloy.

### 1. Sovereign Immunity

The university system is an instrumentality of the state. *See* 20-A M.R.S. §§ 10901, 10901-A, 10903. "Absent legislative authorization waiving sovereign immunity, an action to recover money from the State is barred by sovereign immunity[.]" *John F. Murphy Homes, Inc. v. State*, 2017 ME 67, ¶ 16, 158 A.3d 921. However, "the State may waive sovereign immunity and be sued when it enters into a contract pursuant to a statute granting it authority to do so[.]" *Id.; citing Drake v. Smith*, 390 A.2d 541, 543 (Me. 1978). However, that waiver "is limited to actions arising out of a breach of that contract, and not alternative theories of recovery[.]" *Id.* "The student-college relationship is essentially contractual in nature." *Gomes v. Univ. of Maine Sys.*, 365 F.Supp.2d 6, 38 (D. Me. 2005).

Here, the Plaintiffs allege that the University of Maine entered into a contract with its students for various in-person services. The Plaintiffs allege that the University breached that contract when it transitioned to a purely online format for all its services. Accordingly, Count I of the Plaintiffs' Complaint is not barred by sovereign immunity against the University System because it alleges a breach of contract claim. Moreover, Count's II-IV allege constitutional violations that are not the insulated by sovereign immunity. *See Farley v. Dept. of Hum. Servs.*, 621 A.2d 404, 406 (Me. 1993)("The defense of sovereign immunity will not insulate the State from liability if it is found to have committed an unconstitutional taking in violation of either the United States or Maine Constitutions."); *see also Foss v. Maine Turnpike Authority*, 309 A.2d 339, 342 (Me. 1973). Accordingly, Counts I-IV of the Plaintiffs' Complaint are not subject to dismissal based on sovereign immunity.

4

Count V, however, is barred by sovereign immunity. Count V alleges unjust enrichment based upon the theory that a student's payment of tuition and fees is a benefit conferred upon the University in exchange for in-person services. The Plaintiffs argue that it would be inequitable for the University to retain all of the money paid by students for the Spring 2020 semester because the University transitioned to a purely online platform. The legislature has not authorized recovery from the State on the basis of unjust enrichment and "[e]xceptions to sovereign immunity are strictly construed, with immunity the rule and any exceptions narrowly interpreted." *John F. Murphy Homes, Inc.*, 2017 ME 67, ¶ 16, 158 A.3d 921. Waiver of sovereign immunity is limited to actions arising out of a breach of contract and thus "alternative theories of recovery" do not apply. *John F. Murphy Homes, Inc.*, 2017 ME 67, ¶ 16, 58 A.3d 921. Accordingly, Count V is barred by sovereign immunity against the University System because it seeks to recover money from the state on an alternative theory that has not been authorized by the legislature.

## 2. Educational Malpractice

The Defendants' next argue that the Plaintiffs' claims are barred because they sound in educational malpractice which is not recognized under Maine law. It is widely held that educational malpractice is not a recognized cause of action. *See e.g. Ambrose v. New. Eng. Ass'n. & Colleges, Inc.*, 252 F.3d 488, 499 (1st Cir. 2001)("courts consistently have rejected students' claims of educational malpractice against schools"); *Ross v. Creighton Univ.*, 957 F.2d 410, 414 n.2 (7th Cir. 1992). Generally, educational malpractice is those claims where "the essence of the complaint is that the school breached is agreement by failing to provide an effective education" or ask the court to "review the soundness of the method of teaching that has been adopted by an educational institution." *Ross*, 957 F.2d at 416. Courts have consistently distinguished, however, between educational

5

malpractice claims and those which allege breach of contract arising out of the transition to online platforms in the wake of COVID-19. *See e.g. Patel v. Univ. of Vt. & State Agric. College,* 2021 U.S. Dist. LEXIS 51585, *14 (D. Vt. March 15, 2021)("At this stage, it does not appear that adjudication of Plaintiffs' claim necessarily requires an inquiry into the academic quality of the remote education that Plaintiffs received.); *Hiatt v. Brigham Young Univ.,* 2021 U.S. Dist. LEXIS 3269, *8 (D. Utah Jan. 7, 2021)(the return of tuition and fees for a breach of contract "does not require the Court to ask BYU to change is operations or otherwise interfere in BYU's academic decisions[.]"); *Chong v. Northeastern Univ.,* 2020 U.S. Dist. LEXIS 233923, *8 n.1 (D. Ma. Dec. 14, 2020)("The court is not convinced that plaintiffs' contract claim is merely a disguised educational malpractice claim[.]").

Here, the Plaintiffs and putative class seek to recover tuition and fees paid to the University for an alleged breach of contract. The Plaintiffs allege that their tuition and fees were given in exchange for various in-person services that were not provided when the University System transitioned to a fully remote platform. The court sees no reason to depart from the clear majority of cases which hold, at this initial stage, that a breach of contract claim arising out of a university's transition to remote services during COVID-19 does not sound exclusively in educational malpractice.

Moreover, the court must view the Complaint in the light most favorable to the Plaintiffs. The Plaintiffs have alleged that the putative class and the University System contracted for in-person services that were made unavailable through online learning. Plaintiffs' have identified specific in-person services, such as libraries or fitness and health facilities, that Plaintiffs' allege were material portions of the university and student contract for the Spring 2020 semester. These allegations provide a sufficient set of facts which might be proven on Plaintiffs' breach of contract theory that does not turn exclusively on the quality of education that was actually received. Accordingly, based

6

upon the record and deference required on the Defendants' Motion to Dismiss, the court cannot say that the Plaintiffs Complaint sounds exclusively in educational malpractice.

## B. Failure to State a Claim

The Defendants next argue that the Complaint should be dismissed because the Plaintiff has failed to allege facts which, if true, would entitle the Plaintiff and putative class to relief. The remaining causes of action are: Count I, Breach of Contract against the University System only; Count II, unconstitutional taking under the United States Constitution; Count III unconstitutional taking under the Maine Constitution; Count IV, violation of state due process; and Count VI, conversion against the University System only. The court will address each cause of action in turn.

### 1. Breach of Contract

"[A] contract exists if the parties mutually assent to be bound by all its material terms, the assent is either expressly or impliedly manifested in the contract, and the contract is sufficiently definite to enable the court to ascertain its exact meaning and fix exactly the legal liabilities of each party." *Id.* "For a contract to be enforceable, the parties thereto must have a distinct and common intention which is communicated by each party to the other." *Stanton v. Univ. of Maine Sys.*, 773 A.2d 1045, 1051 (Me. 2000); *quoting Searles v. Trs. Of St. Joseph's Coll.*, 1997 ME 128, ¶ 13, 695 A.2d 1206. Courts have routinely held that "catalogues, bulletins, circulars, and regulations" of a university "made available to the [prospective student] becomes part of the contract." *Ross*, 957 F.2d at 416 (observing that "there seems to be no dissent from this proposition."); *quoting Zumburn v. Univ. of Southern California*, 25 Cal. App. 3d 1, Cal. Rptr. 499, 504 (Ct. App. 1972)(collecting cases from numerous states). Recovery on a breach of contract claim requires proof that "the defendant breached a material term of the contract and that the breach caused the plaintiff to suffer damages." *Tobin v. Barter*, 2014 ME 51, ¶ 10, 89 A.3d 1088.

7

The Plaintiffs have alleged facts which, if proven, are sufficient to pursue a breach of contract claim against the University System. The Plaintiffs entered into the recognized student and university contractual relationship when it paid tuition and fees to attend an institution with State University System. The Plaintiffs allege that the University System advertised itself to prospective students as providing in-person educational experiences and in-person services and facilities. The Plaintiffs further allege that these advertisements were communicated to the purported class through websites, catalogs, and other circulated materials prior to registration and became an express expectation under the terms of the student and university contract.

The Plaintiffs claim that the University System breached the student/university contract when it moved to a purely remote format on March 23, 2020. The Plaintiffs allege that they had a contractual expectation to receive in-person academic instruction and specific in-person services, such as libraries, fitness facilities, labs, etc. The Plaintiffs' further allege that the University System's transition to a purely online format denied Plaintiffs and putative class members the in-person services that they were allegedly entitled to receive under the terms of the contract. If true, the University System's transition to a purely online format could constitute a breach of contract. Accordingly, Plaintiffs have alleged facts which could entitle them and the prospective class members to relief on a breach of contract claim and dismissal is not warranted on the facts presented in the Complaint.

2. Property Interest

The Defendants next argue that Counts II, III, IV, and VI, should be dismissed because the Plaintiff has failed to allege facts sufficient to show that the Plaintiff and putative class members have a property interest in the tuition and fees paid to the University. Although a valid property interest is indeed a necessary element of each

8

remaining cause of action, the rules governing each present separate issues for this court to consider.

### a. Unconstitutional Taking

Counts II and III allege that the University's transition to remote learning without providing a refund constitute an unconstitutional taking of Plaintiffs' property under the United States and Maine Constitutions. *See* U.S. Const. amend. V; *see also* Me. Const. Art. I. § XXI. Maine interprets the state takings clause as identical to its federal counterpart. *See Bell v. Town of Wells*, 557 A.2d 168, 177 (Me. 1989). "In order for there to be a taking . . . there must be a physical invasion of private property or a substantial impairment of its use and enjoyment." *Wellman v. Dept. of Hum. Serv's.*, 574 A.2d 879, 885 (Me. 1990).

The Law Court has held that "[t]he concept of a taking does not apply to the overpayment of money to the state by a citizen[.]" *Wellman*, 574 A.2d at 885. Additionally, the United States Supreme Court has held that a constitutionally protected property interest is more than "an abstract need or desire" or "unilateral expectation[,]" and must instead be based upon "a legitimate claim of entitlement" to the property at issue. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)(holding that a university employee did not have a constitutionally protected property interest in his university employment contract); *see also Student "A" v. Hogan*, 2021 U.S. Dist. LEXIS 6947, *15 (D. Md. Jan. 13, 2021)(rejecting tuition based takings claim against Maryland's public universities over COVID-19 online learning). Moreover, in lawsuits brought against universities in the wake of COVID-19, courts have rejected the claim that students have a constitutionally protected property interest in tuition and fees paid to a university. *See Brandmeyer v. Regents of the Univ. of Cal.*, 2020 U.S. Dist. LEXIS 219766 *22 (N.D. Cal., Nov. 10, 2020)(dismissing identical takings claim against the university based on a lack of valid

9

property interest); *see also Miller v. Bd. of Trs. Of the Cal. State Univ.,* 2021 U.S. Dist. LEXIS 22836 (C.D. Cal. Jan. 13, 2021).

Here, the Plaintiffs have failed to allege facts sufficient to establish that they and the putative class members have a constitutionally protected property interest in the tuition and fees paid to the University System. The Plaintiffs have not alleged any facts which would indicate that they have a legitimate claim of entitlement to any money paid to a University institution. There are no allegations that students had any expectation that they would recover any of the tuition or fees paid for the Spring 2020 semester and there are no allegations that the University System held any funds in trust for its students. Without more, the Plaintiffs cannot prove that they had any legitimate claim of entitlement to any money paid to the University System that would trigger a constitutionally protected property interest.

Moreover, there is nothing in the Plaintiffs' Complaint that would limit its property interest theory. As the court observed in *Brandmeyer,* "Plaintiffs' taking argument, extended to other contexts, leads to an absurd result" because any person who pays for a state service "could argue that their funds had been improperly seized . . . whenever that citizen was dissatisfied with those services[.]" *Brandmeyer,* 2020 U.S. Dist. LEXIS 219766, *23. Similar to the plaintiffs in *Brandmeyer,* the Plaintiffs here cannot establish entitlement to money that was paid to a university when that money was paid in exchange for nonmonetary services. Any claim to the money paid under that contract is indeed abstract and falls short of the legitimate entitlement standard necessary to establish a constitutionally protected property interest. To hold otherwise would allow individuals to maintain an unconstitutional taking claim every time such individuals were dissatisfied with the government's performance under the terms of a government contract.

Based on the forgoing, the Plaintiffs have failed to show that they and the putative class members have a constitutionally protected property interest in the tuition and fees paid to the University System. Counts II and III alleging an unconstitutional taking are properly dismissed based upon the circumstances presented.

### b. Due Process Property Interest

Count IV alleges that the University System violated the state due process clause when it deprived students of their tuition and fees without affording adequate procedural protections. The Maine Constitution provides that "[n]o person shall be deprived of life, liberty or property without due process of law[.]" Me. Const. art. I, § 6-A. The Law Court has held that where a Plaintiff lacks a constitutionally protected property interest at issue, sovereign immunity will bar an action to recover damages under the due process clause unless there is evidence of bad faith for a racially discriminatory or other constitutionally impermissible purpose. *See Farley*, 621 A.2d at 408 (denying both federal and state due process claims for want of a constitutionally protected property interest); *citing Thiboutot v. State*, 405 A.2d 230, 237 (Me. 1979).

Here, the Plaintiffs' due process argument must also fail. The Complaint fails to allege facts sufficient to show there is a constitutionally protected property interest in tuition and fees paid to a University institution. There is no allegation that the University System decision to transition to online services was motivated by any constitutionally impermissible purpose. Accordingly, Count IV must be dismissed.

### c. Conversion Property Interest

Conversion requires a plaintiff to prove, among other things, that the plaintiff had a property interest in the property converted at the time the alleged conversion took place. *See Withers v. Hackett*, 1998 ME 164, ¶ 7, 714 A.2d 798. Courts have routinely rejected recent claims that university students have a property interest in tuition and fees

11

paid to a university for the purposes of a conversion cause of action. *See Omori v. Brandeis Univ.*, 2021 U.S. Dist. LEXIS 71969 *12 (D. Mass. April 13, 2021); *Espejo v. Cornell Univ.*, 2021 U.S. Dist. LEXIS 39227 *21 (N.D. N.Y. March 3, 2021); *Salerno v. Fla. S. Coll.*, 488 F.Supp.3d 1211, 1218-19 (M.D. Fla. Sept. 16, 2020).

Here, and for reasons outlined above, the Plaintiffs have failed to allege facts sufficient to show that they and the putative class have a property interest in their tuition and fees at the time of the alleged conversion. Moreover, the money alleged to have been converted was in the possession of the University System when it transitioned to purely online services. The Plaintiffs and putative class had no right to possess or ability to dictate how that money was allocated and did not have any expectation that the money would be returned. Accordingly, the Plaintiffs have failed to allege facts sufficient to show that they and the putative class had a property interest in the tuition and fees at the time of the alleged conversion.

## C. Claims Against Chancellor Malloy

"Notwithstanding any liability that may have existed at common law, employees of governmental entities shall be absolutely immune from personal civil liability for . . . [a]ny intentional act or omission within the course and scope of employment" unless such "actions are found to have been in bad faith[.]" 14 M.R.S. § 8111(1)(E). The Law Court has explicitly held that immunity for governmental employees in unaffected by the government's acquisition of liability insurance. *See Grossman v. Richards*, 1999 ME 9, ¶ 14, 722 A.2d 371.

Here, Chancellor Malloy is an employee of the University of Maine System. There are no allegations that Chancellor Malloy acted in bad faith or for any other improper motive when the University System transitioned to a purely online platform. Moreover, the decision to close in-person University services in response to the health threats posed

by COVID-19 is certainly a decision within the scope of the Chancellor's University employment. Accordingly, Counts I, V, and VI are subject to dismissal against Chancellor Malloy because each seeks to hold Chancellor Malloy civilly liable for intentional acts done within the scope of Chancellor Malloy's government employment.[1]

Counts II, III, and IV should also be dismissed against Chancellor Malloy. Although government employees may be held liable for certain constitutional violations, to defeat qualified immunity, the government official must violate a clearly established constitutional right of which a reasonable person would have known existed. *See Richards v. Town of Eliot*, 2001 ME 132, ¶ 23, 780 A.2d 281. The remaining counts against Chancellor Malloy allege constitutional violations that require a constitutionally protected property interest. As stated above, the Plaintiffs have failed to allege facts sufficient to show that they have a constitutionally protected property interest here. Accordingly, Chancellor Malloy cannot be held liable for any constitutional violation alleged. Counts II, III, and IV should therefore be dismissed against Chancellor Malloy in his individual capacity. Therefore, the Complaint against Chancellor Malloy is dismissed in full.

## III. Conclusion

The relationship between student and university is one of contract. The Plaintiffs have alleged facts which, if true, could possibly establish that they contracted with the University of Maine System to receive in-person instruction and in-person services. As pled in the Compliant, the University System's transition to a purely online format for the Spring 2020 semester could constitute a breach of the student's contractual expectation to receive specific in-person experiences. At this stage, the court cannot say that recovery on Plaintiffs' breach of contract claim rests entirely on the quality of online

---

[1] Even if Chancellor Malloy were not immune, he would not be liable as a mere employee for the University's alleged breach of contract or tortious conduct.

13

instruction. Accordingly, the Plaintiffs' have alleged facts sufficient to pursue a breach of contract claim against the University of Maine System. However, for the reasons outline above, all other counts in Plaintiffs' Complaint should be dismissed.

The entry is:

Defendants' Motion to Dismiss is DENIED in regards to Count I against the University of Maine System.

Defendants' Motion to Dismiss is GRANTED in regards to Counts II, III, IV, V and VI against all Defendants.

The Complaint against Chancellor Malloy is DISMISSED in full.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Date: July 13th, 2021

_____
Thomas McKeon
Justice, Superior Court

14